The next case on the calendar is Universal Instruments v. Microsystems Engineering, numbers 18-2022 and 18-2100. Good morning and may it please the court, Amy Saharia of Williams and Connolly for Appellant Universal Instruments. The district court's $3 million fee award in this case was necessarily intertwined with and based on its merits ruling on Defendant's Rule 50 motion, but this court's opinion on the merits following that ruling, although affirming the district court, substantially undermined the core legal premise of the district court's merits ruling that the party's contract unequivocally permitted defendants' conduct. We believe this court's ruling makes clear that Universal's copyright claim was objectively reasonable, and for that reason, and because none of the other factors relied on by the district court support the fee award, that award should be reversed. But at a minimum, the court should vacate the fee award and remand the case to the district court to reconsider whether to award fees with the benefit of this court's merits ruling and with the benefit of the party's arguments with respect to that ruling. Turning first to the objective reasonableness of Universal's claims, which is an important factor, as the Supreme Court noted, in the Kurtzine case, the district court's fee award was based in part on its conclusion that no reasonable view of the evidence supported Universal's claims. And if you look back at the district court's merits ruling, and this is at JA 1200, the district court held that Universal's case collapsed because it failed to offer evidence, this is a quote, to offer evidence that MSCI exceeded the scope of the license in Section 8.2d of the EPA. This court on appeal did not embrace that core premise of the district court's ruling. This court held that Section 8.2d of the EPA arguably prohibits, at least impliedly, MSCI from modifying Universal's copyrighted source code. And I think the word arguably is important there, because this court acknowledged with that word that Universal had colorable, reasonable arguments for its interpretation of the contract with respect to the issue of modification. And that undermines, I think eviscerates, the district court's belief that no reasonable view of the contract permitted the defendant's conduct. This court instead turned on that issue to resolve the case on the basis of an affirmative defense, Section 117a, that defendants had never pleaded for 4 years in this case. And we have no way to know whether the district court would have concluded that Universal's interpretation of the contract might not be correct, and number two, that the resolution of the case turned on this affirmative defense that the defendants had never pleaded in 4 years, and that was asserted for the very first time on the eve of trial in a pretrial brief. So at a minimum, we think that if we agree with you on objective reasonableness, that alone isn't enough of a basis for reversal, right? I believe it is, because we don't know that the district court would have reached the same conclusion weighing all the factors had it concluded that Universal's claim was objectively reasonable, which the Supreme Court acknowledged was an important factor in that analysis. An important factor. That's right. And importantly, the district court did not find the other two major factors outlined in Kertzang to be satisfied. It found that Universal's claims and conduct was not frivolous, and it found that Universal had not acted in bad faith. And the fourth, sir, Kertzang factor, which is. The district court, I mean, it did, it seemed to be more than just the merits. It talked about litigation in an unreasonable manner, making things difficult, and I don't know what all specifically that refers to, but it seems like it was more than just, it didn't quite hit frivolous, but there was conduct that justified the award of fees. That's right. And I think part of the problem is that it's not clear what exactly the district court was talking about because its critiques were so vague, and we believe had been not unsubstantiated by defendants on appeal. But to the extent there are particular aspects of Universal's conduct the district court found to be improper that it critiques in its opinion, we think the appropriate course is to do what this court did in the Matthew Bender case, which is to say we don't believe these claims were objectively reasonable. We don't believe these critiques can justify a $3 million fee award for fees incurred throughout the entire litigation, particularly when the district court held that we did not act in bad faith. And so if the district court is going to impose fees based on these vague critiques, it needs to, number one, identify particularly what they are, and number two, tailor the fee award to the fees that resulted from those critiques. For example, one of the things the district court said was that Universal's theory of the case shifted over time. I don't know what that means. Our theory of the case was actually quite consistent throughout the litigation. We consistently argued that defendants breached our copyright by both using and modifying the source code. The only thing defendants have pointed to is that at one point in one oral argument during trial, the counsel identified another provision of the contract as having been breached, even though we had argued all along that that provision of the contract informed the meaning of Section 8.2d. It's hard to see how one answer at one oral argument somehow justifies $3 million in fees, let alone led to any additional fees incurred on the part of defendants. If we were to find that the district court was correct in its other determinations about objective unreasonableness and so on, I'm not saying that we would necessarily, but if we were, and it bases its fee award on the Copyright Act and the discretion given to the district court to award fees to the prevailing party, aren't all of the claims kind of subject to the Copyright Act's grant of discretion to the district court? Or can you describe in what ways they are not intertwined so that an award should be separated out? So I do believe that there are substantial parts of the claims that are intertwined, namely that all of the claims were vested on the interpretation of the contract. But if anything, I think that favors us, because this case was first brought not as a copyright case, but as a case for violation of trade secrets, breach of contract, and the other common law claims that we asserted in our complaint. So those issues were always in this case. The parties were always going to have to address the interpretation of the contract. It wasn't until about a year later — This isn't shifting theories. This is just — That's correct. No. When we filed the First Amendment complaint, we added a copyright claim after the registration of Universal's copyrights. And so to the extent the case — the claims were intertwined, we believe that actually supports the conclusion that they should not be entitled to fees for — for these kind of intertwined issues, because the parties were always going to be litigating those claims. But again, our fundamental submission to the Court is that our claim was objectively reasonable. It took the parties four years of litigation to even stumble upon the ultimate way this case was resolved. It took this Court seven months and a published opinion to reach that conclusion. And if you look at the way this Court resolved the Section 117a claim, it was substantially more developed than the arguments that defendants even offered to this Court and their appeal brief and diverged in significant ways from those arguments. Thank you very much. You have two minutes to rebuttal. Thank you. We'll hear from your adversary. May it please the Court. My name is Tom White, and I represent the Defendants Microsystems Engineering and Missouri Tooling and Automation, and I tried the case before the district court. Let me begin, Your Honor, with what was the focus of opposing counsel's presentation this morning, which rested on the premise that because this Court wrote an opinion on the Section 117 issue, it establishes the reasonableness of their claims. That is a flawed premise. This case was not about the question of the right to modify the source code. That was described by their counsel as minor. The modifications at issue were minor. In this Court's merits opinions, it said at one point that 99.4 percent of the code was the same. At page 46, it said that the code was pretty much identical. Modifications was not the focus of the trial below. The key question, the principal issue, in this Court's words, in the merits opinion, was whether my client, Microsystems, had the right to provide the source code to Missouri Tooling for copying. And on that question, which is what the focus of the trial was, it was a real — quite a straightforward analysis by this Court, because the license in the party's case said that we had a license to reproduce the source code using other suppliers. But if that's so, you — I mean, they got past summary judgment, right? There was a trial. It's a little hard for me to imagine that the district court, that you would have gotten that — or that you all would have gotten that far if their position was objectively unreasonable. Two responses. Yes, Your Honor. Two responses to that, Judge Carney. The first is that the appeal came to this Court on a Rule 50 motion being granted, which, as appellants pointed out in their brief, is an extremely high standard. Those motions are rarely granted. And this Court's affirmance shows that MSCI met that high bar. The second point, Your Honor, is that the unreasonableness of their theory of the case was exposed at trial. Their theory was that this was a brazen theft. Those were the words in opposing counsel's merits brief to this Court. But when the case — How did the theory change? That was one of the — So, yeah, that was a criticism that the district court made. And there were various ways that — because it wasn't simply the unreasonableness of their theory of the case. It was also their litigation conduct and their advocacy that troubled the district courts below. So to your question, Judge Park, some examples of how the theories changed is that they were seeking in a case over a $1 million contract an injunction which would have shut down the manufacturing of pacemakers, which is MSCI's business. And their experts served numerous expert reports, five or six reports, including without leave of the court on the eve of trial, seeking enormous amounts of damages, tens and at one point hundreds of millions of dollars in damages in this $1 million dispute. That's one way of shifting — of theories shifting. At trial, as opposing counsel mentioned in the presentation, they devised a new theory of breach, that a different provision, Section 8.3, was what was breached, which was not a theory that was pled to the district court. Their expert at the trial relied on documents that were not disclosed during the expert discovery process. Isn't it the case that the defendants also changed their theory of the case? If, Judge Jacobs, what you're referring to is the assertion of the Section 117 defense relatively close. Yes. But the trial, the trial was on a subject that actually seems to me turned out to be at the end of the day. The trial — in the face of — if I'm understanding your question correctly, Judge Jacobs, we had numerous defenses, because we — our client was faced with the prospect of its business being shut down by this injunction and potentially hundreds of millions of dollars in damages. So there were 16 witnesses that were on the stand in the case, and there were numerous defenses to all of the potential theories that were being posited by the plaintiffs. The reason the Section 117 — perhaps I'm not understanding your question, but to address one point that came up earlier, the Section — there was broad language in the answer about the rights conferred by the contract being the basis for our affirmative defenses, and, of course, such rights include the statutory rights under 117. And the reason that the answer came very late in these proceedings is that there was a pending Rule 12b motion that was before the Court for a long time, and that was not resolved until the summary judgment decision came along. So that was the reason the one section — Section 117 issue came up relatively late in the proceedings. And as I said before, the real gravamen of this case, the theory of wrongdoing, was the notion that this was a brazen theft. It was not the modifications issue. The — if I could address an issue that was raised by Judge Park, which is that even if this Court were to conclude that their theory was objectively reasonable, and we do not agree with that because the unreasonableness was exposed at trial, the appropriate course of action is simply to affirm the district court anyway under the Supreme Court's decision in Kerstang, because that's only one factor. And, indeed, the core of the Kerstang opinion is not to place too much weight on the objective reasonableness of the theory, and instead to afford the appropriate amount of deference, which is even a heightened form of deference, to the district court when considering the totality of the circumstances. I'd like to address, if I may, in my final couple of minutes, the subject of our cross appeal, because that presents a slightly different question. This is not a matter of whether the district court abused his discretion, Judge Sharp, because this presents an issue of law. And Judge Sharp interpreted this Court's precedents, including principally the decision in Arbor Hill, which was a panel that included Justice O'Connor, among other eminent jurists, and Judge Sharp interpreted that precedent as requiring him to start from the premise that he had to use in-district rates in setting a reasonable attorney's fees, and that it would be incumbent on the prevailing party to show that no firm in the Northern District of New York could have achieved a similar result. And we submit that is the wrong way of looking at the issue. As articulated in Arbor Hill and subsequent fee jurisprudence by this Court, the key question that courts are trying to get at is what a reasonable paying client would pay. And the forum rule is a way, in the words of the Arbor Hill decision, for a court to discipline the market, because in those circumstances, a civil rights case, a noncommercial case, there is not an actual paying client. There is, in effect, no market. There is a tension in your argument. If this claim was one such that no reasonable lawyer would even bring it, how does it follow, how can it follow, that there is no firm in the Northern District that could oppose it, or that the most sophisticated counsel in New York City is required? I acknowledge the tension Your Honor identifies, but the answer is that the unreasonableness of the case was exposed at trial. It was factual unreasonableness. Universal's CEO, Universal knew at the time it filed its complaints that to use the words from its CEO at trial, there was a dispute shortly after the contract was signed over who would own the source code. And then, for purely business reasons, Universal decided to willingly and voluntarily give the source code to Microsystems Engineering. Universal knew that fact. The District Court did not know that fact. The project manager for Universal testified at trial that the provision of that source favor. So whatever legal theory one might be able to devise doesn't change that there were these facts, peculiarly in the knowledge of the plaintiffs, which made their claim unreasonable. Turning in my final second, I would simply suggest that under Arbor Hill on our cross prudence, the relevant, the appropriate approach, the correct interpretation of those decisions is the approach that Judge Lynch took, which is that the starting point here should have been that a reasonable client actually paid these invoices and absent any evidence there was anything wrong with that or they were doing it in anything other than the ordinary course of business. That should have been the starting point in setting the amount of fees, not northern district rates. Thank you. Thank you very much. Ms. Zaharia, you have two minutes of rebuttal. Thank you. Unless the Court has questions about the cross appeal, I would just note that the District Court did exactly what this Court told it to do in Simmons, which also involved eminent jurists and which clarified the Arbor Hill decision and said courts should start with a presumption of the forum rule. So unless the Court has any questions about the cross appeal, I don't feel the need to address that any further. With respect to our appeal, three points I want to make. Number one, it's not true, as counsel said, that the first answer was filed on the eve of trial because of pending motions. There were several other answers filed that addressed the copyright claim, none of which invoked Section 117a, and we cited those, and those are in the joint appendix. Second, the defendants have found no case and cited no case to the Court where, notwithstanding the fact that this Court concluded a claim to be objectively reasonable, it nonetheless affirmed without knowing how the District Court would have balanced the remaining factors. In those cases, such as Matthew Bender, such as Viva Video, such as Zalewski, all of which the party cited, the Court remanded for the District Court to tailor the fee award to the remaining critiques of the party's performance in the case. And third, counsel relied heavily on these facts that came out at trial with respect to ownership of the source code. And I think this is an important point because it shows this actually was a very hard case. Defendants' argument in the trial court and to this Court on appeal was that the final customer acceptance letter and the testimony about that letter showed that they owned the copyright itself, that they owned Universal's copyright. And we responded that there's a distinction in the law between owning copyright and owning copies of copyrighted work. And this Court ultimately relied on that latter point in resolving the Section 117a defense to conclude that defendants owned not the copyright, but a copy of the copyrighted work for purposes of that defense. This case involved hard legal concepts, hard facts. It was hard fought for many years. And nothing about the case justifies $3 million in fees. Thank you. Thank you very much. We'll reserve decision.